IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

WANDA WILSON PLAINTIFF

v. Civil No. 08-4103

MICHAEL J. ASTRUE, Commissioner
Social Security Administration DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Wanda Wilson, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claims for period of disability, disability insurance benefits (DIB), and supplemental security income ("SSI") pursuant to Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 416(i) and 423. In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g). Plaintiff has fined a motion to introduce new evidence, a motion for remand, and an appeal brief. (Doc. 8, 10, 12).

**Procedural Background:**

The plaintiff protectively filed her applications for DIB and SSI on August 23, 2006, alleging an onset date of January 1, 2006, due to severe asthma, chest pain, and shortness of breath. (Tr. 63-70, 82, 89). An administrative hearing was held on March 25, 2008. (Tr. 829-851). Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was 43 years old and possessed a high school education. (Tr. 63, 87, 99, 832). The record reveals that she has past relevant work

experience ("PRW") as a machine operator, security guard, convenience store clerk, housekeeping worker, and poultry plant worker. (Tr. 63, 87, 99, 129-136, 832-835).

On August 25, 2008, the Administrative Law Judge ("ALJ") concluded that plaintiff's medial and lateral canal stenosis with inflammatory hypertrophic changes at the acromioclavicular joint with lateral canal stenosis, supraspinatus tendonopathy and subscapularis tendonopathy; chronic obstructive pulmonary disease (COPD); asthma; gastroesophageal reflux disease (GERD); hypertension; headaches; allergies; sleep apnea; and, a healed ulcer were severe but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 21). After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity to perform a wide range of sedentary that involves lifting no more than 15 pounds at a time and occasional lifting or carrying articles like docket files, ledgers, and small tools. With the assistance of a vocational expert, the ALJ then concluded that plaintiff could perform work as a charge account clerk and telephone solicitor. (Tr. 21).

The plaintiff appealed this decision to the Appeals Council, but her request for review was denied on October 8, 2008. (Tr. 1-5). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. # 5, 6).

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind



AO72A
(Rev. 8/82)

would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

**Discussion:**

In the present case, plaintiff has filed a motion to introduce new evidence. Reviewing courts have the authority to order the Commissioner to consider additional evidence but "only upon a showing that there is new evidence which is material and that there is good cause for the



AO72A
(Rev. 8/82)

failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Woolf v. Shalala*, 3 F.3d 1210 (8th Cir. 1993); *Chandler v. Secretary of Health and Human Servs.*, 722 F.2d 369, 371 (8th Cir. 1983). "To be material, new evidence must be non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied, and there must be a reasonable likelihood that it would have changed the Commissioner's determination." *Woolf,* 3 F.3d at 1215.

To be "material," the evidence must be relevant to claimant's condition for the time period for which benefits were denied. *See Williams v. Sullivan,* 905 F.2d 214, 216 (8th Cir.1990). Thus, to qualify as "material," the additional evidence must not merely detail after-acquired conditions or post-decision deterioration of a pre-existing condition. *See Jones v. Callahan,* 122 F.3d 1148, 1154 (8th Cir.1997) (holding immaterial evidence detailing a single incident occurring after decision and noting proper remedy for post-ALJ deterioration is a new application). We find that the evidence plaintiff seeks to admit is both new and material.

The plaintiff in this case has been treated and diagnosed with asthma and asthma related disorders such as bronchitis, pleurisy, and pneumonia. The evidence before the court reveals as follows. On January 20, 2005, plaintiff experienced a couple of acute asthma attacks while working at Firestone. (Tr. 212). She reported some vague chest pain, but an electrocardiogram ("EKG") showed no changes. Dr. Charles Vermont suspected she was suffering from pleurisy. A chest x-ray revealed no acute abnormality, so he diagnosed plaintiff with asthma and pleurisy. (Tr. 203). He administered Decadron and Depo Medrol injections and updraft treatments and placed plaintiff on an Albuterol inhaler and AA updrafts every four hours and Pulmicort every



AO72A
(Rev. 8/82)

12 hours. He advised her to continue the Advair and prescribed Singulair and Doxycycline. (Tr. 212).

On January 21, 2005, plaintiff was hospitalized following an asthma attack. (Tr. 348-366). Plaintiff complained of chest pain, which she rated as a 5 or 6 on a 10-point scale. She had some subtle EKG changes and Dr. Vermont felt that she should be admitted for observation. He noted some compliance issues and was not sure that plaintiff understood her medical problems. Her asthma seemed to be resolving and plaintiff was discharged on January 22, 2005, with prescriptions for Lortab, Nexium, Advair, Singulair, and Doxycycline. (Tr. 348-366).

On February 1, 2006, plaintiff complained of a swollen throat, difficulty breathing, tightness in her chest, difficulty swallowing, and a cough. (Tr. 189). Dr. Vermont administered a Decadron injection and admitted her for observation. (Tr. 189). He noted that she had been treated with Prednisone and Zithromax for several days but was not responding. (Tr. 243-262). Upon admission, plaintiff had a deep, hacky, wet cough as well as an extraordinarily hoarse voice with complaints of tightness in her chest. Dr. Vermont indicated that plaintiff was treated aggressively for pneumonia with Zithromax and Rocephin, corticosteroids and updrafts for the bronchospasms, and Protonix for the reflux. Plaintiff responded well and was released home on February 3, 2006 with prescriptions for Combivent, Flovent, Prednisone, Ceclor, and Flovent MDI. (Tr. 243).

On February 13, 2006, Dr. Vermont noted that plaintiff was not yet ready to return to work. (Tr. 187). Plaintiff reported pain in the right side of her chest. A chest x-ray revealed no active or acute cardiopulmonary disease, but showed the possibility of an infiltrate. (Tr. 182).

Dr. Vermont diagnosed her with pneumonia. He then prescribed Levaquin for another few days and advised her to continue using her inhalers. (Tr. 187).

On February 16, 2006, plaintiff returned to work and began wheezing. (Tr. 185). Dr. Vermont recommended an allergy consult and gave plaintiff a few days off work. No medication changes were noted. (Tr. 185).

On February 27, 2006, plaintiff followed-up regarding her medical leave. (Tr. 184). She continued to experience asthma attacks. Dr. Vermont advised her to continue the inhalers and all of her asthma medications. He also recommended that plaintiff undergo her allergy consult before looking for another job. (Tr. 184).

On March 22, 2006, plaintiff consulted with Dr. Gene France for an allergy consultation and skin testing. (Tr. 164-166, 417-419, 626-628, 745-747; Doc. 8-1, p. 26, 48-50). Plaintiff reported some sneezing, congestion, and posterior drainage. Nasal itchiness and mouth breathing were also noted with increased symptoms. Ear congestion, headaches, and sore throats were also reported. She had marked inhalant sensitivities due to chemical exposure at work and her pulmonary functions were in the low normal range. (Doc. 8-1, p. 46). Plaintiff indicated that she had been on Flonase with minimal help. Dr. France noted that she was also on significant medications to control her severe persistent asthma, namely Advair 250/50 twice per day, Combivent several times per day, DuoNeb, and Singulair. Antibiotics for pneumonia and sinusitis had also been used 6 or 7 times over the previous year. She had also just stopped smoking in December. Dr. France diagnosed plaintiff with allergic rhinitis, cough, bronchospasm, and chronic idiopathic urticaria (hives). Dr. France then prescribed Flonase or Nasonex for her nasal symptoms and Allegra or Zyrtec for her allergies, as well as environmental



AO72A
(Rev. 8/82)

control measures for her bedroom. In addition, he advised her to observe for any increase in symptoms from foods containing corn, mold, peanuts, soybeans, chocolate, catfish, or almonds. Dr. France directed her to continue on the Advair, Albuterol and/or DuoNeb, and Singulair. He also recommended immunotherapy for inhalant sensitivities. (Tr. 164-166; Doc. 8-1, p. 26).

On April 3, 2006, plaintiff stated that she had conferred with the allergist and he had prescribed two allergy shots per week. (Tr. 183). Dr. Vermont advised plaintiff to continue her medical leave for at least a couple of months because it would take this long to determine whether the allergy shots were going to work. (Tr. 183).

On June 23, 2006, plaintiff returned to Dr. Vermont's office for authorization to return to work. (Tr. 180). He released her to return to work, but advised that he would notify her supervisor that relapse was a possibility. (Tr. 180).

On July 10, 2006, plaintiff complained of symptoms associated with an asthma attack. (Tr. 178). She was administered oxygen and steroid injections. Dr. Vermont noted that plaintiff had experienced a breakthrough, but only after maximal asthma medication. She was advised to continue her current asthma medications. (Tr. 178).

On July 18, 2006, plaintiff reported experiencing another asthma attack with severe shortness of breath. (Tr. 174, 223-224, 227). She was administered two updraft treatments and given Decadron and Depomedrol injections. Although Dr. Vermont's treatment did break the attack, plaintiff was in such distress that he thought it necessary to admit her. (Tr. 175). Plaintiff seemed to be breathing a little better by the following day with no frank wheezing. However, she did complain of continued abdominal pain. (Tr. 232).



AO72A
(Rev. 8/82)

On September 5, 2006, plaintiff sought emergency treatment for difficulty breathing. (Tr. 215-224). She had self administered several updraft treatments at home and was administered one updraft treatment by EMS. Plaintiff was also given a DepoMedrol injection while in the emergency room. Plaintiff was diagnosed with an acute exacerbation of asthma. She was released home with a Medrol Dosepak and advised to continue updraft treatments. (Tr. 215-224).

Later that day, plaintiff presented at Dr. Iqtidar Khan's office. (Tr. 392). Expiratory wheezes were noted upon examination. Dr. Khan prescribed Prednisone and a Z-pack. He advised her to follow-up on her sleep study and colonoscopy. She also had a cyst in her breast for which she was referred to Dr. Szebenyi. (Tr. 392).

On November 11, 2006, x-rays of plaintiff's chest revealed possible subpulmonic effusion (fluid at the base of the lung). (Tr. 550).

On November 14, 2006, plaintiff had a follow-up concerning her back pain and right-sided chest wall pain. (Tr. 387). Her back pain had resolved and her vitals were stable. X-rays of her lumbosacral spine were negative, but a chest x-ray showed continued subpulmonic effusion. A CT scan of her chest was ordered and revealed comprehensive change in the left lung base without pleural fluid. (Tr. 387, 543). There was also a prominent apical cardiac fat pad present. (Tr. 543).

On January 2, 2007, plaintiff was admitted after presenting at Dr. Khan's office with a cough, shortness of breath, wheezing, and an inability to breathe. (Tr. 492-495, 505-518). Vesicular breath sounds were noted without rhonchi, wheezes, or rales. A chest x-ray did not find any evidence of pneumonia. Her basic metabolic panel was within normal limits, except for decreased potassium which was replaced. Plaintiff was admitted and started on IV steroids

and IV Levaquin. She received multiple updraft treatments and was feeling much better. Dr. Khan released her home on January 3, 2007. Her discharge diagnoses were upper respiratory tract infection, asthma, anxiety and depression, allergic rhinitis, and shortness of breath. (Tr. 492-495).

On January 31, 2007, Dr. Khan treated plaintiff for complaints of cough, congestion, back pain, and soreness all over. (Tr. 438). She complained of a cough with chills and rigor. Plaintiff had recently been treated for pneumonia. Dr. Khan ordered a chest x-ray and prescribed Levaquin and Zithromax. Plaintiff also complained of lower back pain, which he considered to be musculoskeletal pain. Dr. Khan prescribed Lorcet Plus to treat this complaint. A chest x-ray revealed some indistinctness of the left lateral hemidiaphragm consistent with early infiltrate and fluid. (Tr. 496).

On February 4, 2007, plaintiff sought emergency treatment for her pneumonia. (Tr. 485-491). She complained of chest and lung pain. Shortness of breath, a cough, and chills were also noted. Plaintiff was administered Darvocet and sent home. The doctor advised her to continue the Albuterol, Advair, Naxonex, Flonase, and Nexium. (Tr. 485-491).

On March 1, 2007, plaintiff was admitted to the hospital due to mastitis, chest pain, and pleuritic type pain. (Tr. 445-450). Chest x-rays revealed rounding of both posterior and left lateral gutter by pleural fluid. Some hyperaeration was also present. (Tr. 468-469). Her mastitis improved with Levaquin and the redness and inflammation decreased. Plaintiff's pleuritic pain also responded very well to antibiotics and steroids. Dr. Ribeiro ordered an echocardiogram to investigate the source of plaintiff's chest pain. He also recommended Aspirin instead of Plavix and ACE inhibitors to treat her hypertension.



AO72A
(Rev. 8/82)

On March 5, 2007, Dr. Khan's notes indicate that plaintiff had experienced tachycardia the previous day and was placed on Toprol. There was some concern about plaintiff being fluid overloaded. Therefore, Dr. Khan decreased her intravenous fluids. (Tr. 444). He discharged plaintiff on March 5, 2007, with Levaquin and a Prednisone dosepack. (Tr. 445-450).

On March 13, 2007, plaintiff underwent a physical exam with Dr. Thomas Fox regarding her fitness to return to work. (Tr. 621-624). She said that she had to beg her specialist to let her try to work part-time to try and maintain her insurance. His report indicated that plaintiff had persistent daily wheezing and shortness of breath. Plaintiff said she had to use her rescue medications several times a day and was unable to walk more than 25 yards without severe dyspnea. Plaintiff said she was complaint with all of her medications. However, her asthma control score was only 15. She also said she had been diagnosed with sleep apnea, but was not receiving treatment. Her sleep study reportedly showed both sleep apnea and nocturnal hypoxia, but plaintiff reported an inability to tolerate a CPAP or BiPAP machine. Her physical examination was unremarkable revealing bilateral clear lungs with a normal respiratory rate and effort. Dr. Fox diagnosed her with hypersomnia with sleep apnea, asthma, obesity, generalized anxiety disorder, tobacco use, depressive disorder, extrinsic asthma, pleurisy without mention of effusion or current tuberculosis, esophageal reflux, lumbago, elevated blood pressure reading without a hypertension diagnosis, and a family history of neoplasm of the gastrointestinal tract. He then prescribed Fexofenadine HCL oral tablets, Advair diskus inhalation, Zyrtec, Atrovent inhalation aerosol solution, and Lorazepam. Dr. Fox noted that plaintiff almost collapsed walking the short distance into his office. Therefore, he did not believe she was safe to work in



AO72A
(Rev. 8/82)

any capacity. He advised her to follow-up with Dr. Khan concerning her sleep apnea. (Tr. 621-624).

On April 23, 2007, plaintiff complained of right-sided chest pain. (Tr. 431, 608). She described it as pain in the right hypochondrium, which was non-radiating, with no specific aggravating or relieving factors. Plaintiff rated her pain as a 6-7 on a 10-point scale. Dr. Khan stated that he had recently performed chest x-rays that were negative. Her respiration was normal with good chest motion, and her breath sounds were of good intensity without a prolonged expiratory phase. Dr. Khan diagnosed her with right rib cage pain and ordered a CT of her chest to rule out any occult malignancy as she did have a history of smoking. He also ordered an ultrasound of her liver and gallbladder to determine the cause of her right hypochondrium pain. (Tr. 431, 608).

On April 26, 2007, a CT scan of plaintiff's chest revealed a nonspecific infiltrate at the left lung base. (Tr. 466-467, 603-605, 619-620). Otherwise, the scan was negative. (Tr. 466-467).

On June 25, 2007, plaintiff presented for her return to work physical for Firestone. (Tr. 616-618). Dr. Fox noted that plaintiff's asthma had dramatically improved since switching from Advair diskus to Advair MDI. She was no longer having daily symptoms. No chest pain or palpitations were reported. A physical examination was normal. Dr. Smith diagnosed plaintiff with obesity, generalized anxiety disorder, depressive disorder, asthma, pleurisy without mention effusion or current tuberculosis, esophageal reflux, uriticaria, lumbago, hypersomnia with sleep apnea, elevated blood pressure reading without a hypertension diagnosis, and a family history of malignant neoplasm gastrointestinal tract. After discussing her case with Dr. France, Dr. Fox



AO72A
(Rev. 8/82)

released plaintiff to return to work on a trial basis. He then prescribed Lorazepam. (Tr. 617-618).

On June 29, 2007, a chest x-ray revealed right cardiophrenic fat pad, left hemidiaphragm with infiltrate at the base, and some hyperaeration. (Tr. 456, 578-579).

On July 9, 2007, plaintiff followed-up with Dr. Khan concerning her recent ER visit. (Tr. 571-575). Her ER ABG showed significant hypoxia and x-rays revealed infiltrates. She was prescribed Zithromax. At the time of her appointment, plaintiff stated that she was feeling better. Dr. Khan ordered a chest x-ray which revealed some improvement in the left basilar infiltrate and fluid. (Tr. 455, 571-575).

On July 10, 2007, Dr. Khan had not yet received the results of plaintiff's chest x-ray, but her ABG showed a pO2 of 80, which was much better than the level registered in the ER. (Tr. 569-570). Plaintiff was also concerned about being a diabetic. Her blood sugar level was 110. Dr. Khan advised plaintiff to call back the following day regarding her x-ray results. (Tr. 569).

On July 17, 2007, plaintiff sought emergency treatment for acute exacerbation of her asthma. (Tr. 630-636, 725-730, 749-755; Doc. 8-1, p. 36-41). Wheezing, chest tightness, and difficulty breathing were noted. Plaintiff was administered a SoluMedrol injection, after which she reported feeling much better. She was released home with a prescription for a Sterapred Dosepack. (Tr. 630-636).

On July 19, 2007, plaintiff was treated for a right heel ulcer. (Tr. 566, 568). She also complained of some shortness of breath. Plaintiff had been treated in the ER earlier in the day for pneumonia. (Tr. 714-719). A chest x-ray performed by Dr. Khan revealed no definite infiltrate, mass, or effusion. However, both lateral gutters were obstructed by overlying soft



AO72A
(Rev. 8/82)

tissues. (Tr, 451-452, 567; Doc. 8-1, 34). Dr. Khan prescribed Zithromax and offered her inpatient treatment for IV antibiotics, which she declined. He also gave her Kenalog for her right heel pain. (Tr. 566).

Plaintiff returned to the ER later in the day stating that Dr. Khan wanted her admitted. (Tr. 720-724). The nurse left a message with Dr. Khan's office to have him telephone them with orders. When this information was relayed to plaintiff, she left without treatment. (Tr. 720-724).

On July 23, 2007, plaintiff reported continued pleuritic pain in her lungs. (Tr. 559). Dr. Khan noted that her white blood cell count had been elevated on her last visit. (Tr. 559).

On September 7, 2007, plaintiff consulted with Dr. Malcolm Smith regarding her chest pain. (Tr. 613-615). Plaintiff was not certain what triggered the pain, but when it started, it seemed to last days or weeks. She felt like it hurt more if she was around chemical smells. The pain was not really relieved with any specific bronchodilator or pain medications. Plaintiff had variable dyspnea but did not associate her dyspnea with the pain. Her medications were said to include Proventil, Nexium, Fexofenadine, Zyrtec, Atrovent, Advair, Lexapro, Lorazepam, Singulair, Hydroxyzine, and Duo-Neb. An examination revealed a clear chest with good air movement and no wheezing, even with forced exhalation. Dr. Smith diagnosed plaintiff with intermittent right chest pain of unclear etiology, a persistent left lower infiltrate, asthma, obstructive sleep apnea treated via CPAP, and obesity. He ordered a repeat CT scan of her chest. If no etiology for her pain was revealed by the CT scan, Dr. Smith stated that he would consider intercostal nerve blocks or other pain control measures. He also advised plaintiff to continue her asthma treatment with Dr. France. (Tr. 613-615).



AO72A
(Rev. 8/82)

On September 18, 2007, plaintiff underwent a high resolution CT scan of the chest including the pulmonary embolus protocol. (Tr. 612). It revealed a small left renal cyst with no evidence of pulmonary embolus or diffuse lung disease. (Tr. 612).

On October 26, 2007, plaintiff was admitted to the hospital after inhaling some boric acid fumes and powder which we was putting out to kill cockroaches. (Tr. 711-713, 731-743). An examination revealed bilateral wheezing and rhonchi. A chest x-ray revealed a possible infiltrate in the left base. Plaintiff was diagnosed with asthmatic bronchitis triggered by exposure to boric acid fumes and power and possible pneumonia. (Tr. 711-713).

On November 9, 2007, plaintiff complained of shortness of breath and pain in her lungs. (Tr. 700-710). She was crying and stated that straightening up or taking deep breaths made the pain worse. Being still reportedly lessened the pain. A chest x-ray revealed blunting of the left lateral gutter by fluid and infiltrate. Plaintiff was diagnosed with pleurisy. She was prescribed Prednisone and Lortab. (Tr. 700-710).

On January 7, 2008, plaintiff sought emergency treatment for shortness of breath and weakness. (Tr. 684-693). Plaintiff was diagnosed with acute bronchitis, a dry cough, and hyperventilation. A chest x-ray revealed some hyperaeration and a pleural parenchymal scar at the left base, but no active disease. Plaintiff was prescribed a Z-pack and Lortab. (Tr. 684-693).

On January 15, 2008, plaintiff complained of pain in her left lung. (Tr. 678-682). A chest x-ray revealed an indistinct left hemidiaphragm. Both lateral gutters were indistinct. Unfortunately, the area was obscured by overlying lung tissue. The findings were said to be consistent with inflammation and pleuritis. Plaintiff was administered a Rocephin injection and given Tussionex. Her condition improved and she was later discharged. (Tr. 678-682).



AO72A
(Rev. 8/82)

On February 1, 2008, plaintiff felt like her throat was closing up. (Tr. 667-676, 790-795). Rhonchi were noted. Plaintiff was diagnosed with an acute anxiety attack. A chest x-ray also revealed an infiltrate in the left hemidiaphragm. Following the administration of Ativan, plaintiff's symptoms subsided and she was released home with a prescription for Tussionex. (Tr. 667-676).

On March 30, 2008, plaintiff complained that her lungs hurt. (Tr. 821-825). Rhonchi were present upon examination. As such, plaintiff was diagnosed with bronchitis. She was then administered an Ativan injection. (Tr. 821-825).

On April 8, 2008, plaintiff was treated in the ER for shortness of breath. (Tr. 815-820). A chest x-ray revealed the possibility of hyperaeration. Plaintiff was diagnosed with asthma and bronchitis. She was prescribed Levaquin and a Sterapred pack. (Tr. 815-820).

In addition, plaintiff submits the following additional medical records to the court, alleging that this evidence was submitted to the ALJ but were inadvertently left out of the record. On October 3, 2006, plaintiff continued to have significant problems with asthma related shortness of breath, coughing, and wheezing with significant exercise or exertion. (Doc. 8-1, p. 26). Pulmonary function studies revealed reversible obstructive airway disease. (Tr. 397, Doc. 8-1, p. 44). Dr. France increased her Advair dosage to 500/50 to be taken along with the Albuterol HFA inhaler or the DuoNeb updraft. She was also to continue on the Allegra and Flonase. (Doc. 8-1, p. 25).

On November 21, 2006, plaintiff reported continual daily wheezing and significant shortness of breath with exertion. (Doc. 8-1, p. 26). She was not sleeping well, was experiencing sleep apnea, and was to be placed on a CPAP. With the medications previously

prescribed, plaintiff had mild obstruction on spirometry. (Doc. 8-1, p. 43-44). IgE revealed that plaintiff was a candidate for Xolair. Therefore, Dr. France prescribed Xolair in early December. (Doc. 8-1, p. 26).

On December 19, 2006, plaintiff was experiencing continued coughing, wheezing and shortness of breath. (Doc. 8-1, p. 26). At this time, she was using her updrafts three to four times daily, as well as taking her other routine medications. (Doc. 8-1, p. 26).

On February 20, 2007, plaintiff indicated that she was sick with pneumonia the previous week. (Doc. 8-1, p. 26). She was also having urticaria (hives). Plaintiff continued on her routine medications, but Dr. France added Zyrtec and Hydroxyzine to treat her urticaria. He also administered a Celestone injection. (Doc. 8-1, p. 26).

On March 6, 2007, plaintiff had a follow-up appointment with Dr. France. (Doc. 8-1, p. 26-26). She had been hospitalized on March 1 due to difficulty breathing and an abscess underneath her left breast. (Tr. 435). Plaintiff remained weak from her asthma, was having difficulty breathing, and was experiencing some anxiety. Dr. France placed her on Lexapro and Lorazepam. (Doc. 8-1, p. 26-27).

On April 3, 2007, plaintiff continued to experience difficulty with her asthma, but was also suffering from acute bronchitis. (Doc. 8-1, p. 27). Dr. France placed her on Doxycycline for two weeks and switched her to and Advair 220/21 HFA inhaler. Her spirometry was normal, but in the low range. (Doc. 8-1, p. 27, 41-42).

On January 10, 2008, plaintiff was placed on Pulmicort Flexhaler to see if it would help control her persistent, chronic asthma. (Doc. 8-1, p. 27). At this time, Dr. France also



AO72A
(Rev. 8/82)

administered a Celestone injection. Plaintiff continued on these medications throughout 2008. (Doc. 8-1, p. 27).

On July 3, 2008, plaintiff was admitted due to an exacerbation of asthma. (Doc. 8-1, p. 15-25). Wheezing and shortness of breath were noted in the emergency room. Chest x-rays revealed a questionable left basilar infiltrate. Plaintiff was treated with Zithromax, updrafts, Nexium, Lexapro, and Zyrtec. The morning following admission, plaintiff indicated that she was comfortable and not experiencing any shortness of breath. Her lungs were clear to ascultation without adventitious sounds, rales, rhonchi, or wheezes. Therefore, plaintiff was released home on Zithromax and a Prednisone dosepak. (Doc. 8-1, p. 17).

On September 2, 2008, plaintiff returned to Dr. France's office. (Doc. 8-1, p. 27). Plaintiff was again placed on Doxycycline for bronchitis and given a Celestone injection. Tussionex was also added for her cough, Allegra was prescribed to treat her allergy symptoms, and she was administered allergy injections. Dr. France noted that minimal exertion resulted in significant breathing difficulty and shortness of breath. As such, he determined that her severe, persistent asthma was not well controlled with medications, the Xolair, or allergy injections. (Doc. 8-1, p. 27).

On September 22, 2008, Dr. France completed a physical RFC assessment. (Doc. 8-1, p. 28-31). He indicated that plaintiff required complete freedom to rest frequently without restriction; could not lift any amount of weight; could not carry any amount of weight; could not push or pull; could not use her feet for repetitive movements throughout the day; could not crawl, climb, or kneel, and could only stoop/crouch, balance, and reach above shoulder level for less than 1/3 of the day. Dr. France also indicated that plaintiff was limited with regard to moving



AO72A
(Rev. 8/82)

machinery, chemicals, humidity, dust, temperature extremes, and fumes. He noted that her objective signs of pain were labored breathing due to severe, chronic asthma. (Doc. 8-1, p. 28-31).

Based on this additional evidence, we find that remand is appropriate, as the additional evidence plaintiff seeks to have admitted appears to indicate that plaintiff's impairments impose limitations that were more severe, during the time period in question, than the evidence before the ALJ indicated. *See Geigle v. Sullivan*, 961 F.2d 1395, 1396-1397 (8th Cir. 1992). At the very least, this new and material evidence causes the court to believe there is a reasonable likelihood that, had the evidence been before the ALJ, it would have changed the Commissioner's decision. *Woolf*, 3 F.3d at 1215. Therefore, on remand, the ALJ is directed to properly consider this evidence.

On remand, the ALJ should also re-evaluate the frequency of plaintiff's emergency room visits, hospitalizations, and doctor appointments. He should also be mindful of plaintiff's testimony that her condition requires her to take breathing treatments every 4 to 6 hours. *See Eback v. Chater*, 94 F.3d 410, 411-412 (8th Cir. 1996) (holding that a vocational expert could not assume that an employer would allow a disability claimant necessary break time to use nebulizer required by her severe asthma).

**<u>Conclusion</u>:**

Accordingly, we conclude that plaintiff's motion to remand and motion to introduce new evidence should be GRANTED as the ALJ's decision is not supported by substantial evidence. (Doc. 10, 12). Therefore, the denial of benefits to plaintiff is hereby reversed and this matter

remanded to the Commissioner for further consideration pursuant to sentence six of 42 U.S.C. § 405(g).

DATED this 12th day of November 2009.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE



AO72A
(Rev. 8/82)